Our next case for this morning, Jordan v. Hepp, is number 143613. May it please the Court, William Coghlanese for the petitioner appellant Joseph Jordan. A Wisconsin court deprived Mr. Jordan of his constitutional rights to represent himself in that court's determination that Mr. Jordan would not present a, quote, meaningful defense in this case. That decision is irreconcilable with the Supreme Court's precedence on the self-representation right in which the court has made clear that although a defendant may conduct his own defense ultimately to his own detriment, that his choice must be honored out of that respect for the individual which is the lifeblood of the law. So is there anything in the Wisconsin court's decision, though, that allows us to draw the conclusion that the court meant to equate minimal performance by a lawyer in the Strickland sense with the ability to present a defense? The court was ready to let Mr. Jordan go ahead until he read that little excerpt from the read. The court made clear that what it was ruling was that Mr. Jordan would not present what the court believed was an effective defense. But how much do we read into that, especially under, of course, AEDPA, how much do we read into that word effective? He surely has to have some competence before he can stand up and defend himself and we have indicated that that competence is probably a notch higher than his required competence to cooperate in his own defense and be considered able to stand trial. Indeed, Your Honor. Do you think that line of cases is inconsistent with Feretta? No, Your Honor. This court has approved of a standard under which a defendant is not automatically entitled to represent himself simply because he is competent to stand trial. But this court has never- I would suggest that that notch is there that I'm talking about. And Mr. Jordan satisfied that standard as the court found in initially granting his request to proceed pro se. The court found- Why is that? It wasn't a tentative finding, though. The court gets more information and says, gee, I'm going to rethink this. Well, I think because what the court did was it shifted from concluding that Mr. Jordan was able to present a defense to conduct the proceedings on his own into evaluating the I'd like to segue sort of into Chief Judge Wood's question to you by reading to you from Pickens versus State. And what the Wisconsin Supreme Court said is, quote, a defendant who while mentally competent to be tried is simply un- I'm sorry, a defendant who while mentally competent to be tried is simply incapable of communication or because of less than average intellectual powers is unable to attain the minimal understanding necessary to present a defense is not allowed to go to jail under his own banner. Is that, in your view, an unreasonable standard that violates Supreme Court precedent per Strickler? Yes, Your Honor. Insofar as the Wisconsin court has suggested that you look to the meaningfulness of a defense that a pro se defendant would put on, that is contrary to very clearly established Supreme Court precedent explaining that we don't look to anything as to the defendant's abilities or the effectiveness of a defense that he would put on. And this court has not ruled otherwise. When this court passed on the Pickens and Klessig standard in Brooks, it did not approve that standard as applying anything like an effectiveness requirement. Instead, this court held only that that standard is valid insofar as it says that a defendant is not automatically entitled to represent himself. And Mr. Jordan makes no such contention here. But the court, but it's not quite what Judge Romer read to you. You keep going back to effective defense and that's not the language of Pickens. Well, the Pickens decision says that if the court finds some limitation that will prevent the defendant from putting on what the court called a meaningful defense, not just about defense, above competence, the court can rely on that as a basis for denying the right. So here we have a literacy issue, right? Among others perhaps, but a big literacy issue. And the court points out that there are a thousand or so, not quite a thousand documents in the case that are going to be relevant. And Mr. Jordan can't read them. Now there are people who are illiterate who are bright enough and competent enough people for certain functions in society, but if they're going to try to defend themselves unable to read a single one of the documents that the state's going to rely on, you think the Supreme Court's Feretta decision says that the court's obliged to let them go forward and do that anyway? Or that at least a rational state court might think that Feretta doesn't go that far? Your Honor, I think that Feretta does stop a court from overriding a defendant's choice. This case exemplifies why. Mr. Jordan made clear that he did not believe the documents were necessary. He said that most of them were irrelevant really, and he made clear that he was not phased by his limited reading ability, which he of course would know better than anybody. He made clear that he was not comfortable with the lawyer that had been appointed for him and would rather represent himself, and that he did not believe a reading ability issue would factor into his defense. So would it make any difference to a court's evaluation if Jordan was completely unable to read? I mean, he could sort of read a little, he wasn't comprehending, but he could, I mean. Your Honor, I think that if a court satisfies itself that a defendant understands the implications of their illiteracy in that hypothetical, and if a defendant nonetheless stands by their choice to proceed pro se, Feretta says that a court does not get to override that decision whether or not it believes it is a bad one. And here, again, the court's prediction was ultimately really proven wrong as the case went to trial. The court said that this was a documents case and not a facts case, but ultimately, in my into evidence, one of them was the confession that was at issue, the central issue in the case, but the other five did not figure prominently into the adjudication of Mr. Jordan's guilt. They were things like phone records, medical records in a case where the victim's death was not at issue. Ultimately, you see that the court did its best to guess as to what would be an effective defense, but really was unable to make a solid prediction ahead of time, and that's part of why I don't think the Supreme Court expects courts to rule on this sort of basis. Can I ask you to turn your attention to the improper vouching aspect of things? Because there, we're dealing with, we are dealing with Strickland. You know, we've put to one side, to the extent one can, the fact that it is this lawyer doing it. The lawyer doesn't object to language that looks a lot like things that this court has done, this improper vouching, but the Wisconsin courts think that maybe there's a strategic reason to do this, and so given this double layer of deference that the Supreme Court talks about with Strickland claims, even if it was error, was it just so wildly wrong for the Wisconsin court to think that this was fleeting enough or unimportant enough that we were required to let it be? Yes, Your Honor. It was error under AEDPA standards. One reason is the centrality of the confession to this case. Without the confession, the evidence was very weak against Mr. Jordan. Three eyewitnesses that were in the car that was fired upon identified the driver of the car in which Mr. Jordan allegedly was in as being the shooter. It sounded to me like it was a very confusing circumstance, because if I am right about the record, this happens at night, and if Mr. Jordan did it, he leaned across the driver and poked the gun out the window, and of course, if it was the driver, it was the driver, but either way, the witnesses would have seen something from the driver's side happening, so it's a muddle. But the point is that none of those eyewitnesses identified Mr. Jordan as the shooter. The only eyewitness who did testify that Mr. Jordan was a shooter was accused by another witness who testified of lying specifically to protect the driver. So without the confession, you have an open question as to who the shooter was, so that's one major factor in the prejudice analysis, that this was the central issue in the case, and this Court has said that... So that's where you would win on the prejudice prong, but what about the performance side of the Strickland analysis? Well, the Respondent concedes that it is improper for an attorney to express their personal opinion about the credibility of a witness, and the Wisconsin Court said that jurors might perceive what the prosecutor here said as expressing some personal opinion or personal knowledge, so I don't think there's any question as to the impropriety of the statement. In light of that, it was totally improper for counsel to stand by and do nothing as those statements were made, especially in the waning moments of trial. This was during the rebuttal of the prosecutor's closing argument, so literally the last things that the jury hear before they go in to deliberate. The defense attorney's failure to make any effort to object at that point falls below any standard of... There's no way that counsel could have thought, you know, the more I say about this miserable confession, the worse off my client's going to be? No, Your Honor, and this Court has said, I believe in its Earle's decision, that a failure to object to things like credibility vouching is hard to write off as strategic, precisely because at that point, the issue has already been highlighted for the jury, and so to stand by and do nothing simply allows them to give in to the vouching without being pushed back at all, and that's what the attorney allowed here. Your Honors, if I could turn briefly to the argument that the State has offered on the self-representation issue, the respondent has also invoked the Supreme Court's decision in Indiana v. Edwards. That decision has no bearing on the issues here, as this Court has already held. The Supreme Court in Indiana v. Edwards said that severe mental illness, it treated that as a condition precedent for its ruling there, and the respondent has conceded that there is no question of severe mental illness here. Would there be a reason, though, to think that a State court might equate severe mental illness to illiteracy or another kind of mental defect? Well, for one thing, this Indiana v. Edwards was not issued at the time of Mr. Jordan's conviction, and so the State court certainly wasn't looking to Indiana v. Edwards. And as this Court held in the United States v. Berry, at some point there must be a limitation to the limitations. I'll reserve the remainder of my time. All right. Thank you. Mr. Wrenn? Thank you, Your Honor. Christopher Wrenn on behalf of the respondent, Randall Hepp. I want to address the Edwards issue first. I confess that I overstated the application of Edwards, but that doesn't mean that it's irrelevant. What we have is a situation where the U.S. Supreme Court has said that even decisions made after the relevant adjudication of the State court can inform the understanding of what the applicable precedents are, in this case, for Retta and Godinez. In this case, because Edwards did not create new law, what it means is that it's really kind of interpreting what the application of the previous decisions would have been, again, for Retta and Godinez. Our position is, of course, that Edwards explains that a mental capacity issue is fully consistent with Godinez and for Retta. I'd note that in Edwards, that the Supreme Court's statement of the issue that was presented, the question presented, was not a question of mental illness, it was a question of mental capacity. They state that several times throughout this. That's what this case is all about. It's about Mr. Jordan's mental capacity. Well, you know, you talk quite a bit about competency in the brief. I'm sorry? In this, I said in the brief. About which? About competence. About competence, yes. But in this context, it is the competency to make a knowing waiver of the right to counsel. So, my question is, what is the evidence that he was not competent to waive his right to counsel? I don't believe that we're arguing that he wasn't competent to waive the right. What we're arguing is that he was not competent to exercise the right of self-representation at trial based on what the trial judge saw. But there you may be going beyond for Retta. Right. Because, as Judge Rovner has said, if you're competent to waive, then you've waived it. And the consequences, as we all agree, are likely to be quite bad for you. But people are allowed to waive their Sixth Amendment right. See, what I wonder is if you're denying that he made his choice voluntarily with a full understanding of the associated risks. Well, I think to a certain extent, that's what it comes back to in the end. Because you don't have ineffective assistance of self-representation. People have tried. We know that, yes. And actually never recognized that. Because, see, my thought is that if competency in representation were part of the standard, how many pros say defendants would ever meet that standard? For waiver? For competency in self-representation. Once they've waived knowingly, they stand up and extremely convincingly say, I know I'm giving up my right to a lawyer. That's what I want to do. And everybody in the courtroom is convinced of that. Now, a separate question is having waived that right, are they going to do at least a minimally competent job of representing themselves? Frequently, as Judge Rovner is saying, the answer is no, they're not going to. Well, they may not do a job that gets them an acquittal. It may not even be minimally competent, I'm saying. Well, I think that that's kind of what we're talking about in terms of what I would think of as layers. We have the standard for, the Strickland standard of what would be minimally competent for a lawyer. Then we have a standard for what would be minimally competent for a pro se litigant. Where has the Supreme Court said that? Why isn't their last word Faretta itself, really? Well, I think Godinez says that we can set a higher standard at the state level for the waiver issue. But, you know, the language in Pickens seems to indicate that a judge has to evaluate a defendant for competence to conduct his own defense, but the Supreme Court said in Faretta that the only question is competence to waive the right to counsel. So, it truly looks as if Pickens is an unreasonable application of Faretta. I, well, I don't think so. I know you don't. Well, I think when we look at Edwards, I mean, in that sense Edwards might very well be a violation of Faretta as well. I think what Edwards, what we've got in that chain of Faretta to Godinez to Edwards is ways in which certain circumstances under which the state may impose a lawyer or at least prohibit a defendant from self-representation. But the question about Edwards in some ways is what's the point? Is it that this severe mental illness or lack of capacity undermine the waiver? Or is it that it means that in the course of conducting the defense, the person isn't going to be able to manage at all? I think it goes to the latter point. And particularly when you get a self-representation that is so subpar that it literally deprives the defendant of a fair trial, not just in reality but in appearance, then you're into the situation that Edwards is talking about. But people can waive trial altogether. They can plead guilty. So why do we care if they deprive themselves voluntarily of a fair trial? And I think that that's what they've said is that there's a different standard on that for waiving counsel and that you can impose a higher standard for waiving counsel. Do you see any difference between the scope in federal court and state court? Well I don't think so. Certainly in this court said in Brooks that Pickens and Klessig were not inconsistent at least with Godinez. And certainly in Godinez they said that the states could impose a higher standard. I don't know why that would be different for the federal courts. You know, here what we have is the state court saying that Jordan was alert and reasonably bright and of average intelligence. That seems the opposite of a finding that he was so intellectually challenged that he was incompetent. So how is that not a finding of competence to waive counsel even, I guess even under the Pickens standard? Well that was what the court said when it initially granted. And then it was following that, that they then went further and the court discovered that he literally did not understand what he was dealing with. Well he didn't understand the documents. He knew he was accused. I mean I guess there's no question he knew what he was accused of and the event and so on and he has his own idea of what kinds of points he wants to make in his defense. He says he does. But his understanding as elicited through his reading of that one paragraph in a police report, not a very significant report, I mean not a very difficult kind of document. No I understand. You didn't have a clue what that meant. Would you mind saying a word about this vouching because I'm very, very bothered by that. It's so blatantly inconsistent with what has been said in so many cases. I don't see how this was a reasonable application of Strickland for the lawyer to just sit there and say nothing when there was nothing else to lose by saying, you know, I object. Well in a sense we don't know what the lawyer was thinking because we never had what in Wisconsin's DeMochner hearing on ineffective assistance of counsel, the court decided that But the, one possibility is, reasonable possibility is that the court did not, that the defense attorney did not want to call attention to these statements. But there was nothing else at stake really. The victim's credibility was absolutely central in this case and this confession was the be all and the end all. Right, and there was no challenge to that confession. Well I'm not, I also, I'm very troubled by the vouching, very, very, and I'm also troubled by the trial court's attitude which seemed to amount to, oh well, prosecutors will be prosecutors. I think in the context of the entire, of that, of the entire presentation that those two statements that he identified would not have, did not cause him any harm. I mean on the prejudice prong, Mr. Jordan might win on, conceivably under what I'm inferring here, he might win under the prejudice prong, but I don't think he can win under the, under the, I mean he might win under the deficient performance prong, but I don't think he wins under the prejudice prong. Well I think that the vouching for credibility of the defendant was both wrong and prejudicial in this context. Well I'm not sure that I can, I can dissuade you of that at this point because the record is what the record is, and I read the record as basically the prosecutor. I don't, I mean I don't see any potential trial strategy for failure to object. I just, I'm trying, you know, I've been trying to think of what it might have been. Well I think at most at that point that what we would wind up with is that we would, if we were to go back into the state court, we would want to have a hearing with the defense attorney offering an explanation. Here the court, as often happens in Wisconsin courts anyway, the court looked at the record and determined that it did not need a hearing to ask for an explanation by the defense counsel about why he chose not to object at this point. Beyond that, as I said, the record is what the record is, and I read the record as not, even if it's a deficient performance of not objecting, as not creating the Strickland level of prejudice in the case. The court doesn't have any other questions, I mean. No, thank you very much. Thank you. Mr. Coglianese? Your Honor, I would just like to make two points about the self-representation issue and one about the ineffective assistance issue. The respondent had not challenged the knowing and voluntariness of the waiver, but if that were to be put at issue, there's no question that Mr. Jordan's waiver was knowing and voluntary. As the court said after initially granting his request, if he doesn't understand the consequences, then I've just made the worst ruling in the history of jurisprudence. In addition, if the issue is instead competence to represent oneself, the court is rightfully concerned about the possibility that no defendant could ever clear that bar, and that is precisely the concern that the court's decision here raises. A court will always be able to conclude that a defendant will not do as good a job as the court might think would be needed to prevail, but that can't possibly be the basis for denying the right or the right has no meaning. As for the ineffective assistance issue, respondent seems to agree that we have a strong argument on the issue of defective performance. As for prejudice, this was the key issue in the case. Again, without that confession, Mr. Jordan's doubt, Mr. Jordan's guilt is an open question for the jury. For Mr. Jordan's counsel to leave that issue unaddressed in the waning moments before the jury went to deliberate had a substantial effect on this, and there is a reasonable probability that without that deficient performance, the outcome would have been different. I suppose that he would have objected if he'd been able to represent himself. Pardon me, Your Honor? It was a facetious question. Would he, would the defendant have been able to, would he have objected to the vouching? Mr. Jordan vehemently denied making the confession. If he had been the one in charge, there's no reason to believe he would have stood by like this. Thank you, Your Honor. All right, thank you. And I believe your firm took this case at the request of the court. We appreciate your help very much. It's a great assistance to the court and to your client. Thanks as well to the state.